UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

Kelli Bodiford, Sheina Heusner, Jada Madeam,   Case No. 24 cv 5785
Niya Lloyd, Ngozi Okpu and Anastacia Sancroft,

       Plaintiffs,      **COMPLAINT**

   -v-         Jury Trial Demanded

Medrite Midtown West LLC and Engie Silva,

       Defendants.

-------------------------------------------------------------------x

   Plaintiffs Kelli Bodiford ("Bodiford"), Sheina Heusner ("Heusner"), Jada Madeam ("Madeam"), Niya Lloyd ("Lloyd"), Ngozi Okpu ("Okpu") and Anastacia Sancroft ("Sancroft") (collectively, "Plaintiffs") by and through their attorney Nisar Law Group, PC complaining of Defendants  Medrite Midtown West LLC ("Medrite") and Engie Silva ("Silva") (collectively "Defendants") allege as follows:

## <u>NATURE OF THE CASE</u>

   Plaintiffs bring cause of action pursuant to FLSA §215 for retaliatory discharge for engaging in protected activity.  Beginning on or about January 2022, Plaintiffs were requested to work additional hours beyond 40 hours in the workweek to perform auditing / manual field work. At various times, Plaintiffs Bodiford, Lloyd, Okpu and Sancroft complained to their supervisors that they would not perform manual work in the field without overtime pay.  Plaintiffs Heusner and Madeam performed the additional manual work in the field during the month of January 2022 and were not properly compensated for their hours worked over 40 hours in a workweek. However, when management asked Plaintiffs Heusner and Madeam to work additional hours again on or about February and March 2022, Plaintiffs Heusner and Madeam also refused and

complained to supervisors that they had a right to overtime compensation for working hours beyond 40 hours in a workwork. On or about April 13, 2022 all named Plaintiffs were discharged which was within approximately three months or less from the time Plaintiffs' opposed working overtime hours without overtime pay, or in close temporal proximity of protected activity under the FLSA. Plaintiffs Heusner and Madeam further bring claims pursuant to FLSA §201 et seq. and NYLL §651 et seq., rules and regulations to recover underpayments of their overtime wages for their hours worked beyond 40 hours in a workweek during on or about January 1, 2022 through January 31, 2022 when they performed audits or manual work in the field.

At a meeting held on or about April 13, 2022, managers including Director Silva ordered non-African American employees to leave the meeting room and for all Plaintiffs who were all African American women to remain. Silva stated to Plaintiffs that she had them investigated and generally accused all named Plaintiffs of requesting sexual favors from subordinates for better work assignments, bullying, smoking and drinking on the job. These accusations were all false accusations made as a pretext to discriminate and retaliate against Plaintiffs. During the relevant time period of Plaintiffs' employment, they did not have a history of discipline or unsatisfactory work performance and were promoted. Therefore, each of Plaintiffs were shocked that they were discharged based on these baseless and false accusations and suffered stress, anxiety, sadness, sleeplessness hopelessness and loss of enjoyment of life. Accordingly, all Plaintiffs further bring claims for discriminatory discharge based on race and sex pursuant to NYS Human Rights Law §296 et seq. and for different and adverse treatment based on race and sex pursuant to NYC HRL §8-107(1)(a). .

On or about April 6, 2022, Plaintiff Okpu complained to Silva that she observed her preferential treatment given to non-African American employees in scheduling work assignments

and Silva's comment that "I'm here to take care of my people and make sure they are good." Silva's comment about "my people" excluded Plaintiffs and referenced Latina and Latino employees. Silva dismissed Okpu's complaint without addressing her comment "my people." Approximately one week after this complaint was made to Silva, Plaintiff Okpu was discharged on April 13, 2022 by Silva. As stated supra, Plaintiff Okpu did not have a history of discipline or satisfactory work performance and was also promoted. The close proximity between the adverse employment action of discharge and the protected activity of complaining to Silva about different and adverse treatment of African American employees was retaliation in violation of the NYS HRL 296 et seq. and NYC HRL §8-107 et seq.

Accordingly, all named Plaintiffs seek backpay, liquidated damages, compensatory including mental anguish damages, punitive damages, attorneys fees and costs pursuant to FLSA §215, NYS HRL §296 and NYC HRL §8-107. Plaintiffs Heusner and Madeam additionally seek to recover underpayments of overtime wages plus liquidated damages, attorneys fees and costs pursuant to FLSA §201 et seq and NYLL §651 et seq., rules and regulations. Plaintiff Okpu additionally seeks backpay, compensatory including mental anguish damages, punitive damages, attorneys fees and costs for retaliation based on race in violation of NYS HRL §296 and NYC HRL §8-107.

## JURISDICTION

1.    This Court has original jurisdiction over this action pursuant to 28 USC §1331 and the Fair Labor Standards Act, 29 USC §201 et seq.

2.    Based upon information and belief, Medrite is a limited liability company organized under the laws of New York State and is engaged in interstate commerce as it operates urgent care medical facilities in New York, New Jersey and Florida.

3.      Based upon information and belief, at all relevant times, Medrite was an employer within the meaning of the FLSA as it: a) engaged in interstate commerce and their employees regularly handled or worked with pharmaceutical drugs, various medical products that have been moved in or produced for commerce by any person; and ) had an annual gross income / sales of at least $500,000.

4.      Pursuant to 28 USC §1367(a) this Court has supplemental jurisdiction over the New York state law claims under NY Labor Law §651 et seq, rules and regulations, NYS Exec. Law §296 et seq., and NYC HRL, NYC Administrative Code §8-107 et seq.

5.      Venue in this district is proper under 28 USC §1391 because all or a substantial part of the events or omissions giving rise to the claims occurred in this district as set forth *infra*.   Moreover, during the relevant time period Plaintiffs worked at Defendant's facility located in New York County with an address of 352 West 51st Street, New York, NY 10019.

<u>STATEMENT OF FACTS</u>

<u>The Plaintiffs</u>

1.      During the relevant time period, Plaintiff Bodiford was a resident of  Bronx County, New York.

2.      Plaintiff Bodiford was employed by Medrite as a medical assistant from on or about February 23, 2021 to on or about August 2021 when she was promoted to site manager and terminated on or about April 2022.

3.      During the relevant time period, Plaintiff Heusner was a resident of  Bronx County, New York.

4.      Plaintiff Heusner was employed as a vaccinator from on or about February 15, 2021, promoted to scheduling manager on or about August 2021 and terminated on or about April 2022

5.      During the relevant time period, Plaintiff Madeam was a resident of Kings County, New York.

6.      Plaintiff Madeam was employed by Medrite as a medical assistant from on or about December 2020, promoted to scheduling manager on or about September 2021 and terminated on or about April 2022

7.      During the relevant time period, Plaintiff Lloyd was a resident of New York County, New York.

8.      Plaintiff Lloyd was employed by Medrite as an assistant manager from on or about November 23, 2021 and terminated on or about April 2022.

9.      During the relevant time period, Plaintiff Okpu was a resident of Bronx County, New York.

10.      Plaintiff Okpu was employed by Medrite as a site manager from on or about December 2020 and terminated on or about April 2022.

11.      During the relevant time period, Plaintiff Sancroft was a resident of Kings County, New York

12.       Plaintiff Sancroft was employed by Medrite as an assistant manager from on or about December 10, 2021 and terminated on or about April 2022.

13.      On or about April 13, 2022, Plaintiffs were required to attend a meeting with management.

14.      The members of management who were present at the meeting on or about April 13, 2022 were: Director Silva, Senior Director Mercie Mallari ("Mallari"), Human Resources associates, Marc Jean ("Jean") and Gerald Sebels ("Sebels") and Head of Human Resources Izzy Friedman ("Friedman")

15.      During the meeting, management including Defendant Silva ordered all other employees who were non-African American to leave the meeting room.  Thereafter, Defendant Silva told

Plaintiffs who were all African American women that she investigated them and that Plaintiffs were all discharged.  Silva baselessly and falsely accused Plaintiffs of requesting sexual favors from subordinates in exchange for favorable work assignments.  All Plaintiffs except for Plaintiff Heusner were told they were discharged at a meeting held on or about April 13, 2022.  Plaintiff Heusner was contacted by phone on or about April 13, 2022 by Director Mallari as Plaintiff Heusner was on vacation. Mallari similarly told Plaintiff Heusner that she was fired for requesting sexual favors from subordinates for favorable work assignments.

16.    Each of Plaintiffs were shocked at Defendants' false accusations that they requested sexual favors from subordinates for better assignments.  Prior to their discharge on or about April 13, 2022, Plaintiffs had no history of discipline or unsatisfactory work performance and were promoted to their positions.

17.    According to a 2022 Harvard Business Review article, one study found, "participants were more likely to attribute the anger of Black female employees to internal characteristics, or her personality.  This had negative consequences because internal attributions translated into lower performance ratings and leadership evaluations."  Daphna Motro et al., (2022) The "Angry Black Woman" Stereotype at Work, Harvard Business Review, http://hbr.org/2022/01/the angry black woman stereotype at work

18.    Based upon information and belief, Defendants purposely investigated Plaintiffs based on their race and sex and Defendants' attribution of any perceived negative emotions expressed by Plaintiffs as inherently angry Black women.

19.    In a 2017 National Institute of Health article, a study found that, "[c]onsistent with our hypotheses, we found that among a sample of undergraduates, a Black female target, regardless of pregnancy status, was perceived as having had sex with more people in the past…, more likely to

receive some form of public assistance, to have lower education…than a White female target. These effects support our hypotheses that there are negative stereotypes about Black women related to sexuality, motherhood and socioeconomic status that are consistent with the historical images of the jezebel and welfare queen archetypes." *Psychol Women Q.* 2016 September 01; 40(3); 414-427

20.     Based upon information and belief, Defendants contrived the pretext that all named Plaintiffs were fired for requesting sexual favors from subordinates from their racist and misogynistic stereotype of African American women as the historical jezebel archetype.

21.     Each of Plaintiffs suffered stress, anxiety, sadness, sleeplessness, hopelessness and loss of enjoyment of life because they were each discharged based on an outrageous and false accusation that each of them requested sexual favors from subordinates in exchange for favorable work assignments.

Protected Activity in Close Temporal Proximity to Discharge on or about April 13, 2022

22.     During the relevant time period, Plaintiffs performed non-exempt office work and received a salary for a workweek of forty (40) hours.

23.     On or about January 2022, in order to cut labor costs and to avoid paying employees hourly overtime wages,  Medrite's management requested that Plaintiffs work additional work hours beyond 40 hours in a workweek to perform audit work in the field without any additional compensation or hourly overtime wages at one and one half times their regular wage rate for hours worked beyond 40 hours in a workweek ("overtime hours").

24.     Overtime wages under the FLSA are non-waivable by agreement or private settlement. *See, Cheeks v. Freeport Pancake house, Inc*. 796 F.3d 199, 202 (2d Cir. 2015) Defendant's policy of avoiding payment of overtime wages was unlawful and willful.

25.     Defendants were aware during the relevant time period that Plaintiffs were required to be paid overtime wages for overtime hours and/or requested Plaintiffs to work overtime hours without proper pay in reckless disregard that their conduct may have violated the FLSA and/or NYLL.

26.     For purposes of determining whether an employee is exempt or non-exempt from overtime wages under the FLSA and NYLL, an employee's duties are controlling, not the job title.

27.     Pursuant to the FLSA and NYLL, employees who perform manual labor are not exempt from overtime wages.

28.     Prior to and after Plaintiff's respective promotions to salaried "manager" positions, Plaintiffs performed manual work which was clerical in nature and they were required to follow the work parameters set for them.  At all relevant times, Plaintiffs were supervised by managers above them.

29.     Defendants misclassified Plaintiffs as exempt salaried managers to make them work overtime hours and avoid paying them commensurate overtime wages to cut its labor costs.

30.     Plaintiffs Heusner and Madeam worked approximately 50 hours or 10 hours beyond 40 hours per workweek without overtime compensation during the month of January 2022.  All other Plaintiffs refused to work these additional overtime hours and complained to management that they were entitled to overtime compensation if they worked overtime hours.

31.     Plaintiffs Heusner and Madeam were asked again in February 2022 to continue working overtime hours without overtime compensation.  These Plaintiffs complained to management and Defendants had corporate knowledge that they refused to work these additional overtime hours without overtime.   Notwithstanding their refusal to work without overtime compensation, management asked again in March 2022 if Plaintiffs would work additional hours without overtime pay.   Plaintiffs again refused to work these additional hours without overtime

compensation.

32.     The Second Circuit has long held that three (3) weeks to five (5) months between the protected activity and the adverse employment action was sufficiently close in temporal proximity to satisfy a retaliation claim.  *See, Kwan v. Andalex Grp., LLC*, 737 F3d 834, 845 (2d Cir. 2013)

33.     As to Plaintiffs Heusner and Madeam, they were discharged within approximately one month from their protected activity of opposing and complaining to Defendants about their unlawful overtime compensation policy and/or payroll practices.

34.     All other Plaintiffs were discharged from approximately 3 to 4 months from similarly engaging in their protected activities of opposing and complaining to Defendant about its unlawful overtime compensation policy and/or payroll practices.

Discrimination and discharge based on race and sex/gender

35.     On or about April 6, 2022, Plaintiff Okpu complained to Director Engie Silva ("Silva") that she believed Silva was giving preferential treatment in scheduling work  to non-African American, Latino employees and observed Silva had previously made statements such as, "I'm here to take care of my people and make sure they are good."  Plaintiff Okpu understood that the term "my people" as used by Silva did not include her or her African American co-workers.  Silva dismissed and waived away Okpu's concern stating, "I know you guys feel I don't hear you, but I do hear you."

36.     But for Plaintiffs' African American race, Plaintiffs would not have been discharged on or about April 13, 2022.

37.     But for Plaintiffs' African American race they would not have been investigated, stereotyped as hypersexualized and aggressive and falsely accused by Defendants of requesting sexual favors from subordinates for better work assignments or bullying, smoking and drinking

during work breaks and manipulating timesheets which were false and defamatory.

38.     But for Plaintiffs' female sex/gender, Plaintiffs would not have been baselessly and outrageously accused of requesting sexual favors from subordinates in exchange for favorable assignments by Defendants.

39.     But for Plaintiffs' African American race and female sex/gender, Plaintiffs would not have been stereotyped by Defendants as hypersexual and aggressive and falsely accused Plaintiffs of requesting sexual favors from subordinates, bullying, smoking and drinking on the job.

40.     But for Plaintiffs' African American race and/or female sex/gender, Plaintiffs would not have been discharged on or about April 13, 2022 by Defendants.

41.     But for Plaintiffs' engagement in protected activity under FLSA 215, NYS HRL and NYC HRL they would not have been discharged.

42.     But for Plaintiffs engagement in protected activity during on or about January 2022 to on or about March 2022, of opposing Defendants' unlawful overtime wage and hour and payroll practices, they would not have been discharged.

43.     But for Plaintiff Okpu's engagement in protected activity on or about April 6, 2022 of complaining to Silva about her unlawful discrimination against all Plaintiffs based on their African American race, Plaintiff would not have been discharged.

44.     The retaliation and discharge by Defendants against Plaintiffs was intended to have an *in terrorem effect* and would deter reasonable employees from complaining about its unlawful payroll and/or discriminatory employment practices based on race and sex/gender.

45.     Based on Defendant's retaliatory and sudden discharge of Plaintiffs based on false  and pretextual accusations of requests for sexual favors, bullying, and smoking and drinking during work breaks, each of Plaintiffs suffered garden variety mental anguish, including stress, anxiety,

sleeplessness, sadness, hopelessness and loss of enjoyment of life.

46.    Plaintiffs seek to recover back pay, liquidated damages, compensatory including mental anguish damages, punitive damages, for retaliation and discharge for engaging in protected activities in violation of FLSA §215 and NYS HRL 296 et seq., attorneys fees and costs in amounts to be determined at the time of trial.

The Defendants

47.    Based upon information and belief, Medrite is a limited liability company organized under the laws of New York State.

48.    Based upon information and belief, Medrite operates urgent care medical facilities in New York, New Jersey and Florida and is engaged in interstate commerce.

49.    Based upon information and belief, Medrite's headquarter office is located at 352 West 51st Street, New York, NY 10019.

50.    Based upon information and belief, at all relevant times, Medrite was an employer within the meaning of the FLSA as it: a) engaged in interstate commerce and their employees regularly handled or worked with pharmaceutical drugs, various medical products that have been moved in or produced for commerce by any person; and ) had an annual gross income / sales of at least $500,000.

51.    Defendants willfully violated the FLSA's overtime §207 and retaliation §215 provisions as it knew or showed reckless disregard for whether its conduct was prohibited by the FLSA.

52.    On or about February 2022, after Plaintiff Heusner asked about overtime wages for working overtime hours, Jean of human resources stated to Plaintiff Heusner that they would look into the issue.  Management did not respond to this inquiry by Plaintiff Heusner.

53.    Defendants were aware that manual Plaintiffs performed manual work and not exempt

from overtime wages for all overtime hours worked.

54.    The statute of limitations on the FLSA §215 and §207 claims is three years based on Defendant's willful conduct.

55.    Under the FLSA, NYLL, NYS HRL and NYC HRL employers are liable for the conduct of its officers and supervisors.

56.    Defendant Medrite is liable for the conduct of its officers, supervisors and employees under the FLSA, NYLL, NYS HRL and NYC HRL

57.    Under the FLSA, NYLL, NYS HRL and NYC HRL, officers and supervisors are individually liable for their direct conduct against employees.

58.    Defendants and Medrite's officers and human resources employees acted in concert with and aided and abetted Defendants' discriminatory conduct against and unlawful discharge of Plaintiffs.  Accordingly, Defendants are jointly and severally liable to Plaintiffs for liability under the FLSA, NYLL, NYS HRL and NYC HRL.

59.    Based upon information and belief, Defendant Silva was employed by Medrite during the relevant time period of named Plaintiffs' employment as an officer and director with the authority to hire, fire, modify work schedules, change and implement employment policies and practices of Medrite, and impact any other terms and conditions of Plaintiffs' and other employees' employment.

60.    Based upon information and belief, on or about March 2022, Defendant Silva performed a mock investigation of Plaintiffs in order to create a false pretext to discriminate and retaliate against Plaintiffs based on her racial and sexual animus towards Plaintiffs who were all African American women to discharge Plaintiffs.  At all relevant times prior to Silva's investigation, Plaintiffs were in good employment standing and were all promoted.

12

61.    Based upon information and belief, Silva recommended and/or directly terminated all named Plaintiffs' employment on or about April 13, 2022.

62.    Plaintiffs each complained to Defendants directly or Defendants had corporate knowledge of Plaintiffs complaints at various times during 2022 about Medrite's unlawful employment practice of refusing or failing to pay overtime wages for actual overtime hours worked during the time period January 2022 through on or about March 2022.

63.    On or about April 6, 2022, Silva commented in front of Plaintiff Okpu that "I'm here to take care of my people and make sure they are good."  Silva's comment about "my people" which did not include Plaintiffs could lead a reasonable person to infer racial animus based on sex against Plaintiffs who were African American women.  Plaintiff Okpu further complained about Silva's preferential treatment in scheduling work for non-African American employees.  However, Silva dismissed and waived away Plaintiff Okpu by stating, "I know you guys feel I don't hear you, but I do hear you" and ended the discourse on April 6, 2022.

64.    Defendant Silva falsely accused Plaintiffs of requesting sexual favors as a pretext to discriminate and/or retaliate against Plaintiffs to discharge them on or about April 13, 2022 because they were all previously employees in good employment standing.

## AS and FOR A FIRST CAUSE OF ACTION
### Retaliation and discharge in violation of FLSA §215

65.    Plaintiffs repeat and reallege each and every previous allegation as if fully set forth herein.

66.    FLSA 29 USC §215 (a)(3) states in relevant part, "(a) …It shall be unlawful for any person …(3) to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter…"

67.     The statute of limitations under FLSA §215 is two (2) years, and in this case, three (3) years for Defendants' willful violation of the FLSA §207 in misclassifying Plaintiffs as salaried exempt employees and refusing to and/or failing to pay overtime compensation for actual overtime hours worked.  *See*, *US DOL WHD* Field Assistance Bulletin 2022-02.

68.     As alleged throughout this Complaint, Defendant knew or showed reckless disregard for whether its conduct was prohibited by the FLSA and acted willfully when it retaliated against Plaintiffs for opposing its practices of refusing to and failing to pay  overtime compensation for actual overtime hours worked.

69.     As alleged throughout this Complaint, Defendants were aware that Plaintiffs' were manual workers and were not exempt from overtime wages for all hours worked in excess of 40 hours in a workweek during all relevant times of Plaintiffs' employment.

70.     As alleged throughout this Complaint, after Plaintiffs were promoted to the title of "manager," they still performed manual work duties and misclassified Plaintiffs by a change in job title as exempt from overtime wages to avoid properly paying Plaintiffs' for their actual hours worked beyond 40 hours in a workweek.

71.     Under the FLSA rules and regulations the duties test determines whether an employee is non-exempt and not job titles alone.

72.     As alleged throughout this Complaint, most of Plaintiffs performed work as vaccinators at the start of their employment and as "managers" performed clerical work which were work duties that were non-exempt from overtime.

73.     Under the FLSA, employees have an unwaivable right to overtime wages and may not be waived by private settlement or private agreement.  Plaintiffs could not and did not waive their right to overtime wages by agreeing to work as salaried "managers."

74.    The Second Circuit has long held that three (3) weeks to five (5) months between the protected activity and the adverse employment action was sufficiently close in temporal proximity to satisfy a retaliation claim. *See, Kwan v. Andalex Grp., LLC*, 737 F3d 834, 845 (2d Cir. 2013)

75.    As alleged throughout this Complaint, Plaintiff's were salaried non-exempt clerical workers who regularly worked 40 hours per week at Defendant's office.

76.    As alleged throughout this Complaint, Defendants requested that Plaintiffs work overtime hours since on or about January 2022 performing manual auditing work in the field. Plaintiffs' auditing work was performed pursuant to well-established techniques and procedures and within closely prescribed limits.  Moreover, Plaintiffs were supervised by managers during the relevant time period.   Accordingly, Plaintiffs were at all times non-exempt employees within the meaning of the FLSA.

77.    As alleged throughout this Complaint, Plaintiffs each complained to management that they refused to work overtime hours without overtime compensation and accordingly exercised rights protected under the FLSA which opposed or complained about the employer's unlawful wage and hour and payroll practices.

78.    As alleged throughout this Complaint, within approximately a 3 months or less time period of Plaintiffs' engagement in protected activity at various times, all Plaintiffs were terminated on or about April 13, 2022.

79.    As alleged throughout this Complaint, Plaintiffs Heusner and Madeam worked overtime hours without proper overtime wage payments for their actual hours worked from on or about January 1, 2022 to on or about January 31, 2022.

80.    As alleged throughout this Complaint, Plaintiffs Heusner and Madeam Defendant requested that they work overtime hours without overtime compensation on or about February

2022 and March 2022 stating to management again, each time, that they refused to work overtime hours without overtime compensation, and accordingly exercised their rights protected under the FLSA which opposed or complained about the employer's unlawful wage and hour and payroll practices.

81.    As alleged throughout this Complaint, only Plaintiffs were discharged from employment at the meeting held on or about April 13, 2024 which was within close proximity to their complaints or opposition to Defendant's wage and hour and payroll practices as set forth *supra*.

82.    Based on the FLSA rules and regulations, even if a worker's belief that he is due overtime turns out to be mistaken, he has still engaged in protected activity. *See*, *US DOL WHD Field Assistance Bulletin 2022-02*.

83.    Based on the FLSA rules and regulations, adverse actions for purposes of a retaliation claim include but are not limited to: termination from employment, reduction of work hours or rate of pay, shift changes, elimination of premium pay, demotion and African Americanlisting.

84.    As alleged throughout this Complaint, Defendant Silva falsely alleged that all of the Plaintiffs were discharged because they requested sexual favors, bullied, smoked and drank on the job as a pretext to discriminate and discharge Plaintiffs.  However, up to the time of each of Plaintiffs' discharge, they were each in good employment standing with Medrite.

85.    But for Plaintiffs' engagement in protected activity of opposition to Defendants' unlawful employment practice of denying overtime wages protected under the FLSA 29 USC §201 et seq., Plaintiffs would not have been discharged.

86.    As a result of this discharge and false pretextual accusations used by Defendants to discharge Plaintiffs caused each of Plaintiffs to suffer mental anguish including but not limited to: stress, anxiety, sadness, sleeplessness, hopelessness and loss of enjoyment of life.

87.    As a result of these violations by Defendants and retaliation for Plaintiffs' engaging in protected activity, Plaintiffs are entitled to damages pursuant to the FLSA 29 USC §215(a)(3), including but not limited to back pay, liquidated damages, compensatory including mental anguish damages, punitive damages and attorneys fees and costs.

**AS AND FOR A SECOND CAUSE OF ACTION**
FLSA §207 Overtime
DEFENDANTS' FAILURE TO PAY OVERTIME WAGES
(Plaintiffs Heusner and Madeam)

88.    Plaintiffs repeat and reallege each and every previous allegation as if fully set forth herein

89.    Defendants' failure to pay Plaintiffs Heusner and Madeam overtime pay in accordance with the FLSA is a direct violation of the FLSA, 29 U.S.C. §207.

90.    The FLSA 29 USC §207 rules and regulations requires that non-exempt employees must be compensated for all hours worked beyond 40 hours in a workweek at a rate of one and one half times their regular hourly wage rate.

91.    Defendants' failure to pay proper overtime wages for each hour worked over forty (40) per week was willful within the meaning of 29 U.S.C. §255 meaning the Employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.

92.    The statute of limitations for violations under the FLSA is two (2)years, or three (3) years for willful violation meaning the Employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.

93.    As alleged throughout this Complaint, Defendant knew or showed reckless disregard of whether its conduct of denying Plaintiffs overtime wages was prohibited by FLSA.

94.    As alleged throughout this Complaint, Defendants were aware that Plaintiffs were manual workers and were not exempt from overtime wages for all hours worked in excess of 40 hours in a workweek.

95.    As alleged throughout this Complaint, notwithstanding Defendant's knowledge or reckless disregard of their prohibited conduct, it requested that Plaintiff's work overtime hours without overtime pay for all hours worked beyond 40 hours in a workweek.

96.    As alleged throughout this Complaint, during on or about January 2022, Defendants failed to compensated Plaintiffs Heusner and Madeam overtime wages for their overtime hours worked performing manual audit duties in the field in addition to their clerical work in the office that were approximately 10 hours each beyond 40 hours in the relevant workweeks.

97.    Accordingly, Plaintiffs were entitled to overtime wages at one and one half times their regular hourly rate of approximately $28.13 totaling approximately $42.19 per hour for all hours worked in excess of 40 hour in a workweek.

98.    Defendants' failure to comply with the FLSA has caused Plaintiff to suffer a loss of wages.

99.    As alleged throughout this complaint, Defendants willfully employed Plaintiffs for workweeks longer than forty (40) hours and failed to compensate Plaintiffs for their actual hours worked in excess of forty (40) hours per week at a rate of at least 1.5 times his regular wage rate of approximately $28.13 per hour totaling approximately $42.19 per hour during the relevant time period.

100.    The Second Circuit has long held that where there is a finding of liability for wage underpayments, liquidated or double damages are the norm and single damages the exception. *See, Brock v. Wilamowsky*, 833 F2d 11, 19 (2d Cir. 1987)

101.    Plaintiffs seek to recover their overtime wage underpayments, double or liquidated damages for the wage underpayment amounts to be determined at the time of trial, attorneys fees and costs pursuant to FLSA 29 USC §201 et seq.

## AS AND FOR A THIRD CAUSE OF ACTION
## VIOLATION OF NEW YORK LABOR LAW, 22 NYCRR 142

## DEFENDANTS' FAILURE TO PAY OVERTIME
(Plaintiffs Heusner and Madeam)

102.   Plaintiffs repeat and reallege each and every previous allegation as if fully set forth herein

103.   As alleged throughout this complaint, Defendants employed Plaintiff within the meaning of NYLL §§ 2, 190, and 651.

104.   The statute of limitations under the NYS Wage Theft Act, NYLL 651 et seq. rules and regulations is 6 years.

105.   As alleged throughout this complaint, Defendants failed to pay Plaintiffs overtime wages for their actual hours worked in excess of forty (40) hours per week during the relevant time period of their employment from on or about January 1, 2022  through on or about January 31, 2022.

106.   Defendants violated Plaintiffs' rights to overtime pay under Title 12 NYCRR 142-2.2 which was at one and one half times their regular rate of approximately $28.13 per hour totaling approximately $42.19 per hour for all of Plaintiffs' hours worked beyond 40 hours in each workweek during the relevant time period.

107.   Defendants' failure to comply with the NYLL overtime requirements has caused Plaintiffs to suffer loss of wages and interest thereon.

108.   As alleged throughout this complaint, Defendant's failure to pay proper overtime wages was willful.

109.   Due to Defendants' NYLL violations, Plaintiffs are entitled to recover from Defendant their unpaid overtime wages in an amount to be determined at trial, plus an amount equal to 100% of Plaintiff's unpaid overtime wages in the form of liquidated damages, together with attorneys' fees and costs of the action, including pre- and post- judgment interest, pursuant to NYLL §§ 198 and 663(1).

**AS AND FOR A FOURTH CAUSE OF ACTION**
Discrimination and Discharge Based on race and sex/gender in violation of NYSHRL §296
(All named Plaintiffs)

110.    Plaintiffs repeat and reallege each and every previous allegation as if fully set forth herein.

111.    The New York State Human Rights Law §296 states in relevant part, "1. It shall be an unlawful discriminatory practice: (a) For an employer…because of an individual's …race,…sex…to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

112.    As alleged throughout this Complaint, Defendants discharged all Plaintiffs on or about April 13, 2022 based on their African American race and sex/gender because at the discharge meeting Defendants ordered all non-African American employees to leave the meeting room and Plaintiff's who were all African American women were left in the room and told they were discharged.  Thereafter, Defendants baselessly and outrageously accused Plaintiffs of requesting sexual favors from subordinates for favorable work assignments as a pretext to discriminate and discharge Plaintiffs based on their race and gender.

113.    As alleged throughout this Complaint, on or about April 6, 2022, Plaintiff Okpu complained to Director Engie Silva ("Silva") that she believed Silva, a Latina was giving preferential treatment in scheduling work to non-African American employees because previously Silva made statements such as, "I'm here to take care of my people and make sure they are good." And Silva dismissed Plaintiff Okpu stating, "I know you guys feel I don't hear you, but I do hear you."

114.    As alleged throughout this Complaint, Plaintiffs did not have a history of discipline or unsatisfactory work performance and were all promoted before their discharge.

115.    As alleged throughout this Complaint, by baselessly and falsely accusing Plaintiffs of

requesting sexual favors, bullying, smoking and drinking during breaks, Defendants created a pretext to discriminate and discharge Plaintffs based on their race and sex/gender.

116.    As alleged throughout this Complaint, but for Plaintiffs' African American race, Plaintiffs would not have been discharged on or about April 13, 2022.

117.    As alleged throughout this Complaint, but for Plaintiffs' female sex, Plaintiffs would not have been discharged on or about April 13, 2022.

118.    As alleged throughout this Complaint, but for Plaintiffs' African American race and female sex/gender, Plaintiffs would not have been racially stereotyped and stereotyped by sex as hypersexual and aggressive African American women and baselessly accused of requesting sexual favors, bullying, smoking and drinking and discharged based on this pretext on or about April 13, 2022.

119.    As alleged throughout this Complaint, but for Plaintiffs' African American race they would not have been stereotyped as hyper-sexual, aggressive and bullying, smoking and drinking on the job and discharged on or about April 13, 2022.

120.    As alleged throughout this Complaint, Plaintiffs suffered garden variety mental anguish for their sudden discharge based on false accusations or pretext of requesting sexual favors,  including stress, anxiety,  hopelessness, sleeplessness, sadness, loss of enjoyment of life.

121.    Accordingly, Plaintiffs seek back pay, compensatory including mental anguish damages, punitive damages, attorneys fees and costs in amounts to be determined at the time of trial.

## AS AND FOR A  FIFTH CAUSE OF ACTION
Discrimination and Discharge based on Plaintiffs' race and sex / gender in violation of
NYC HRL §8-107 et seq

122.    Plaintiffs repeat and reallege each and every previous allegation as if fully set forth herein.

123.    New York City Administrative Code §8-107(1)(a) states in relevant part, "It shall be an

unlawful discriminatory practice for an employer…because of the…race…gender… of any person: …(2) …to discharge from employment such person; or (3) To discriminate against such person in compensation or in terms, conditions or privileges of employment.

124.    As alleged throughout this Complaint, Defendant discharged all Plaintiffs on or about April 13, 2022 based on their African American race and sex/gender because at the discharge meeting Defendant's managers including Silva ordered all non-African American employees to leave the meeting room.

125.    As alleged throughout this complaint, Silva who is non-African American had previously stated, "I'm here to take care of my people and make sure they are good" to Plaintiff Okpu, an African American woman who had complained on or about April 6, 2022 that she observed Silva giving non-African American employees preferential treatment for work schedules.

126.    As alleged throughout this Complaint, Plaintiffs who were all African American women were the only African American employees who remained in the meeting room on or about April 13, 2022 and told they were discharged based on a false pretext of requesting sexual favors.

127.    As alleged throughout this Complaint, Plaintiffs were baselessly and outrageously accused of racist and sexist stereotypes of hypersexualized African American women including requesting sexual favors when they were all in good employment standing prior to their discharge on or about April 13, 2022.

128.    As alleged throughout this Complaint, Defendants' false and baseless accusations as the basis for all Plaintiffs' discharge was a pretext to discriminate against and discharge Plaintiffs because prior to Plaintiffs' terminations, they had no record of discipline or unsatisfactory work performance and were all promoted.

129.    As alleged throughout this Complaint, but for Plaintiffs' African American race and female

sex, they would not have been terminated on or about April 13, 2022.

130.    As alleged throughout this Complaint on or about April 13, 2022, Plaintiffs were treated differently and adversely than the non-African American and/or female employees who were asked to leave the meeting and were not fired.  However, Plaintiffs who were all African American women were instructed to remain at the meeting and discharged despite the fact that Plaintiffs were previously in good employment standing.

131.    As alleged throughout this Complaint, as a result of the discrimination, false accusations including requesting sexual favors and discharge, Plaintiffs suffered mental anguish including but not limited to: anxiety, stress, hopelessness, sadness, sleeplessness and loss of enjoyment of life.

132.    Accordingly, Plaintiffs each seek back pay, compensatory including garden variety mental anguish damages, punitive damages, attorneys fees and costs in amounts to be determined at the time of trial.

## AS AND FOR A SIXTH CAUSE OF ACTION
*Retaliation in violation of NYS HRL §296*
(Plaintiff Okpu)

133.    Plaintiffs repeat and reallege each and every previous allegation as if fully set forth herein.

134.    The HRL§ 296  prohibits discrimination based on race in discharge from employment, …in compensation or in terms, conditions of privileges of employment.

135.    The HRL§ 296 further prohibits retaliation and states in relevant part, "7. It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article."

136.    As alleged throughout this Complaint, on or about April 6, 2022, Plaintiff Okpu engaged

in protected activity under the NYS HRL when she complained to Director Engie Silva ("Silva") that she believed Silva was giving preferential treatment in work scheduling to non-African American employees and Okpu observed Silva had previously made statements such as, "I'm here to take care of my people and make sure they are good." Silva dismissed and waived away Okpu's concerns stating, "I know you guys feel I don't hear you, but I do hear you."

137.    The HRL §296 further prohibits as discrimination, "(e) For any employer, …to discharge …or otherwise discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article."

138.    Approximately one week after her Complaint to Silva, on or about April 13, 2022, Plaintiff was terminated from her employment by Silva.

139.    As alleged throughout this Complaint, Plaintiff had no history of discipline or unsatisfactory work performance and was promoted prior to her discharge.

140.    As alleged throughout this Complaint, Defendant baselessly and falsely accused Plaintiff of requesting sexual favors as a pretext to retaliate and discharge Plaintiff for her Complaints to Silva about Silva's unlawful discriminatory practices against African American female employees.

141.    As alleged throughout this complaint, Silva terminated Plaintiff Okpu on or about April 13, 2022, approximately one week or in close proximity to her protected activity of complaining to Silva about Silva's unlawful employment practices based on race.

142.    As alleged throughout this complaint, but for Plaintiff Okpu's engagement in protected activities under NYLL 296, Plaintiff Okpu would not have been terminated.

143.    As alleged throughout this Complaint, Silva's comments, favorable treatment of non African American employees in scheduling, and false accusations that Okpu requested sexual

favors should be inferred as discriminatory intent to treat Okpu differently and adversely.

144.    As a result of Defendants' retaliation and discharge and false pretextual accusations for the discharge, Plaintiff Okpu suffered mental anguish including but not limited to: stress, anxiety, sadness, sleeplessness, hopelessness and loss of enjoyment of life.

145.    These acts of retaliation by Defendant against Plaintiff was intended to have an *in terrorem* effect on her and to deter other reasonable employees from complaining about Defendant's employment practices that Plaintiff believed in good faith was unlawful.

146.    Accordingly, Plaintiff Okpu seeks back pay, compensatory including garden variety mental anguish damages, punitive damages, attorneys fees and costs in amounts to be determined at the time of trial.

## AS AND FOR A SEVENTH CAUSE OF ACTION
*Retaliation and Discrimination in violation of NYC HRL §8-107*
(Plaintiff Okpu)

147.    Plaintiffs repeat and reallege each and every previous allegation as if fully set forth herein.

148.    New York City Administrative Code §8-107(1)(a) states in relevant part, "It shall be an unlawful discriminatory practice for an employer…because of the…race…gender… of any person: …(2) …to discharge from employment such person; or (3) To discriminate against such person in compensation or in terms, conditions or privileges of employment.

149.    The NYC HRL 8-107(7) further states in relevant part, "It shall be an unlawful discriminatory practice for any person engaged in activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter…The retaliation or discrimination complained of in this subdivision need not result in an ultimate action with respect to employment, …or in a materially adverse change in the terms and conditions of employment…provided, however, that the retaliatory or

discriminatory act or acts complained of must be reasonably likely to deter a person from engaging in protected activity.

150.    As alleged throughout this complaint, Plaintiff Okpu was retaliated against for complaining to Silva about her observed discrimination against African American employees with comments by Silva such as "I'm here to take care of my people and make sure they are good" on or about April 6, 2022.

151.    As alleged throughout this complaint, Silva terminated Plaintiff Okpu on or about April 13, 2022, approximately one week or in close proximity to her protected activity of complaining to Silva about Silva's unlawful employment practices based on race.

152.    As alleged throughout this Complaint, Silva's comments, favorable treatment of non African American employees in scheduling, and false accusations that Okpu requested sexual favors should be inferred as discriminatory intent to treat Okpu differently and adversely.

153.    As alleged throughout this complaint, Plaintiff Okpu suffered mental anguish as a result of the retaliation and termination and false accusations including requesting sexual favors by Silva.

154.    These acts of retaliation by Defendant against Plaintiff was intended to have an *in terrorem* effect on her and to deter other reasonable employees from complaining about Defendant's employment practices that Plaintiff believed in good faith was unlawful.

155.    Plaintiffs seek to recover back pay, compensatory including garden variety mental anguish damages, punitive damages, attorneys fees and costs.

### **PRAYER FOR RELIEF**

**WHEREFORE** named Plaintiffs each respectfully request in their favor and against the named Defendant Medrite and order and judgment for the following relief:

**A.**    declaring that Defendant retaliated against them for opposing Defendant's unlawful wage and hour and payroll practices in violation of FLSA §215 in the First Cause of Action; and

**B.**     awarding damages of back pay, liquidated damages, compensatory including mental anguish damages, punitive damages, attorneys fees and costs pursuant to FLSA §215; and

**C.**     declaring Defendant violated FLSA §207 for failing to properly pay Plaintiffs Heusner and Madeam their overtime wages for all hours worked beyond 40 hours in a workweek at one and one half times their regular hourly wage rate, in the Second Cause of Action; and

**D.**     awarding underpayment of overtime wage damages to Plaintiffs Heusner and Madeam together with double or 100% liquidated damages, attorneys fees and costs pursuant to FLSA §201 et seq.; and

**E.**     declaring that Defendant failed to properly pay Plaintiffs Heusner and Madeam their overtime wages in violation of NYLL §651 et seq., rules and regulations in the Third Cause of Action;

**F.**     awarding Plaintiff Heusner and Madeam overtime wage underpayment damages together with 100% liquidated damages, attorneys fees and costs pursuant to NYLL §651 et seq., rules and regulations;

**G.**     declaring that Defendant violated of NYS HRL §296 by discriminating and discharging all named Plaintiffs based on race and sex/gender in the Fourth Cause of Action; and

**H.**     awarding all named Plaintiffs damages including: back pay, compensatory including garden variety mental anguish damages, punitive damages, attorneys fees and costs pursuant to NYS HRL §296 et seq; and

**I.**     declaring that Defendant violated of NYC HRL §8-107 et seq. by discriminating and discharging all named Plaintiffs based on race and sex/gender in the Fifth Cause of Action

**J.**     awarding all named Plaintiffs damages including: back pay, compensatory including garden variety mental anguish damages, punitive damages, attorneys fees and costs pursuant to

NYC HRL §8-107 et seq ; and

**K.**      declaring that Defendant retaliated against Plaintiff Okpu for complaining about or opposing unlawful discrimination based on race or protected activity in violation of NYS HRL §296 et seq. because of her complaint to director Silva that she gave preferences in scheduling work to non-African American employees in the Sixth Cause of Action; and

**L.**      awarding both Plaintiff Okpu back pay, compensatory including garden variety mental anguish damages, punitive damages, attorneys fees and costs for the retaliation she suffered in violation of NYS HRL §296; and

**M.**      declaring Defendant retaliated against Plaintiff Okpu in violation of NYC HRL §8-107 under Seventh Cause of Action when Plaintiff Okpu engaged in protected activity by complaining to director Silva that Defendant treated African American employees differently and adversely in scheduling work; and

**N.**      awarding Plaintiff Okpu damages for retaliation in violation of NYC HRL §8-107 including:  back pay, compensatory including garden variety mental anguish damages, punitive damages, attorneys fees and costs; and

**O.**      Any and all other further relief as this Court shall deem just and proper.

Dated:  New York, NY
        July 30, 2024

                                          Nisar Law Group, PC
                                          Attorneys for Plaintiffs

                                          /s/ Susan Ghim

                        BY:     _____
                                          Susan Ghim
                                          60 East 42nd Street, Suite 4600
                                          New York, NY 10165
                                          Ph. 646-889-1011
                                          Email: SGhim@Nisarlaw.com